# Exhibit A

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are covered persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, and WILLIAM SULLIVAN, <br><br> Plaintiffs, <br><br> v. <br><br> CONSTELLA INTELLIGENCE, INC., RICHARD ROES 1–10, *fictitious names of unknown individuals* and ABC COMPANIES 1–10, *fictitious names of unknown entities*, <br><br> Defendants. | Case No. 2:24-cv-10571 <br><br> **NOTICE OF REMOVAL** |

**TO**: United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

**WITH NOTICE TO:**

Clerk of the Superior Court
Superior Court of New Jersey
Essex County Civil Division
Essex County Justice Building
465 Dr. Martin Luther King, Jr. Blvd.
Newark, NJ 07102

Hon. Mayra V. Tarantino
Superior Court of New Jersey
Essex County Civil Division
Essex County Justice Building
465 Dr. Martin Luther King, Jr. Blvd., Floor 2
Newark, NJ 07102

Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
PEM LAW LLP
1 Boland Drive, Suite 101
West Orange, NJ 07052

Ekwan E. Rhow
Elliott C. Harvey Schatmeier
BIRD MARELLA RHOW
LINCENBERG DROOKS NESSIM
LLP
1875 Century Park East, 23rd
Floor
Los Angeles, CA 90067

John A. Yanchunis
Ryan J. McGee
MORGAN & MORGAN P.A.
COMPLEX LITIGATION GROUP
201 N. Franklin Street,
7th Floor
Tampa, FL 33602

**PLEASE TAKE NOTICE** that under 28 U.S.C. §§ 1332, 1441, 1446 and 1453, defendant CONSTELLA INTELLIGENCE, INC. ("Constella"), by and through its undersigned counsel, hereby removes this civil action and all claims and causes of action therein from the Superior Court of New Jersey, Essex County, Law Division, where it is pending under Docket No. ESX-L-007212-24, to the United States District Court for the District of New Jersey, Newark Vicinage. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1332(a) and (d).

Constella denies any liability in this case, denies the allegations of Plaintiffs' complaint, and reserves all rights to contest the sufficiency of service of process and/or the existence of personal jurisdiction, and to contest the merits and/or class treatment of all claims in Plaintiffs' complaint or any subsequent pleading. For

purposes of the jurisdictional requirements for this removal only, the allegations of Plaintiffs' complaint meet the requirements for jurisdiction under 28 U.S.C. §§ 1332 (a) and (d) and demonstrate that removal to this Court is proper.

In support of removal, Constella states the following:

## LOCAL RULE 10.1 STATEMENT

The plaintiffs in this action are Atlas Data Privacy Corporation, Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney and William Sullivan. The address for Atlas Data Privacy Corporation is 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302. The remaining plaintiff addresses are unknown to Constella, which is filing this Notice of Removal. Plaintiffs are represented by Rajiv D. Parikh, Esq., Kathleen Barnett Einhorn, Esq. and Jessica A. Merejo, Esq. of PEM Law LLP, 1 Boland Drive, Suite 101, West Orange, NJ 07502; Ekwan E. Rhow, Esq. and Elliot C. Harvey, Esq. of Bird Marella Rhow Lincenberg Drooks Nessim LLP, 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067; and John A. Yanchunis, Esq. and Ryan McGee, Esq. of Morgan & Morgan Complex Litigation Group, 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

Constella is represented by Lauri A. Mazzuchetti of Kelley Drye & Warren LLP, One Jefferson Road, 2nd Floor Parsippany, New Jersey 07054.

## BACKGROUND

1.      Plaintiffs Atlas Data Privacy Corporation ("Atlas"), as the purported assignee for the claims of 16,854 individuals (the "Alleged Assignors"), Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney and William Sullivan (collectively, "Plaintiffs"), commenced an action on October 17, 2024, when they filed their Complaint (the "Complaint") in the Superior Court of New Jersey, Essex County, entitled *Atlas Data Privacy Corporation, et al., v. Constella Intelligence, Inc., et al*., Docket No. ESX-L-007212-24 (the "Action").   Under 28 U.S.C. § 1446(a) and Local Civil Rule 5.1(e), a copy of all process, pleadings, and orders filed to date in the State Court Action are attached.  (*See* **Ex. A**.)[1]

2.      The Action alleges that Constella violated N.J.S.A. 47:1A-1, *et seq.*, and N.J.S.A. 56:8-166.1, known as "Daniel's Law."

3.      In their Complaint, Plaintiffs allege that Constella makes available the "name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished phone number of the Individual Plaintiffs and [Alleged Assignors])."   (Compl. ¶ 44.) The Complaint alleges that each Individual Plaintiff and the Alleged Assignors sent Constella nondisclosure requests, but that Constella failed to respond or cease "the disclosure or re-disclosure

---

[1]  All citations of "Ex." refer to the accompanying declaration of Lauri A. Mazzuchetti, dated November 18, 2024.

on the Internet or the otherwise making available of the protected information." (*Id.* ¶¶ 55–57.)

4. Atlas purports to assert claims on behalf of the Alleged Assignors; the Complaint alleges that the Alleged Assignors are 16,854 unidentified judges, law enforcement officers, prosecutors, and their family members who allegedly have assigned their claims against Constella to Atlas. (*Id.* ¶¶ 27–28.)

5. This Notice of Removal is based primarily on the allegations of the Complaint and does not admit the truth of the facts asserted in the Complaint, the validity of Plaintiffs' claims, or the entitlement to any form of relief. Constella expressly denies that Plaintiffs are entitled to any relief, and disputes, among other things, the existence of personal jurisdiction over it.

## LEGAL STANDARD

6. "[A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)). "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Id.*

7. "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to simplify the pleading requirements for removal

and to clarify that courts should apply the same liberal rules to removal allegations that are applied to other matters of pleading." *Id.* (citation, quotation marks, and brackets omitted).  Accordingly, "[a] statement 'short and plain' need not contain evidentiary submissions." *Id.* at 84.

## BASIS FOR REMOVAL

8.  Constella is entitled to removal of the Action because (A) diversity jurisdiction exists under 28 U.S.C § 1332(a); and/or (B) jurisdiction exists under the Class Action Fairness Act ("CAFA") 28 U.S.C. §§ 1332(d), 1441(a)–(b), and 1453.

## I.  Diversity Jurisdiction Exists Over This Action (28 U.S.C. § 1332(a))

9.  This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) because: (1) disregarding the collusive assignment of alleged claims to Atlas, the real parties in interest are citizens of New Jersey, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

### A.  Complete Diversity of Citizenship Among The Parties

#### 1.  Constella's Citizenship

10.  As set forth herein, at times relevant to this Notice of Removal, Constella was and is a citizen of Delaware and California.

11.  "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (citing 28 U.S.C. § 1332(c)).

12.     At the commencement of the Action and at the filing of this instant Notice of Removal, Constella was and is a corporation incorporated under the laws of the State of Delaware (*see* **Ex. B.**), with its principal place of business in the State of California.

### 2.     Plaintiffs' Citizenship

#### a.     Individual Plaintiffs

13.     The Complaint alleges that Jane Doe-1 is a police officer working in northern New Jersey.  (Compl. ¶ 18.)  New Jersey law requires that "[e]very member of a police department and force shall be a resident of the State of New Jersey while serving in such position."  N.J.S.A. 40A:14-122.8.3.  Accordingly, Jane Doe-1 is a citizen of New Jersey.

14.     The Complaint alleges that Jane Doe-2 is a correctional police officer who lives in northern New Jersey.  (Compl. ¶ 19.)  Accordingly, Jane Doe-2 is a citizen of New Jersey.

15.     Edwin Maldonado ("Maldonado") alleges that he is an officer in the Plainfield, New Jersey Police Department and is, therefore, a New Jersey citizen. (*Id.* ¶ 20).

16.     Scott Maloney and Justyna Maloney (collectively, the "Maloneys") are a married couple who "live together in New Jersey."  (*Id.* ¶ 21.)  Accordingly, they are New Jersey citizens.  (*See id.*)

17.     William Sullivan ("Sullivan") alleges that he is a veteran of the New Jersey Department of Corrections, and since 2020, has served in various roles in New Jersey.  (*Id.* ¶ 25.)  He is a New Jersey citizen.  (*See id.*)

18.     Maldonado, the Maloneys and Sullivan are collectively referred to herein as the "Individual Plaintiffs."

### b.     Atlas

19.     Atlas is purportedly a Delaware corporation "with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302." (*Id.* ¶ 26.)  It claims to be the "the assignee of the claims of approximately 16,854 individuals who are all 'Covered Persons' under Daniel's Law." (*Id.* ¶ 27.)  For the reasons set forth herein, Atlas's ostensible Delaware citizenship does not destroy the complete diversity underlying this Court's subject matter jurisdiction under 28 U.S.C. § 1332(a).

20.     Plaintiffs may not "impermissibly manufacture[] diversity or ***use*[] *an unacceptable device to defeat diversity***," such as collusive assignments of claims. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 93 (2005) (emphasis added).

21.     Courts may "look to all of the facts and circumstances and ask whether the assignment did destroy diversity jurisdiction," *Att'ys Tr. v. Videotape Comput. Prods., Inc.*, 93 F.3d 593, 600 (9th Cir. 1996), and have "refused to ignore the possibility that a plaintiff may have engaged in a collusive attempt to manipulate the

forum for a particular lawsuit," 3 Wright & Miller, *Federal Practice and Procedure*
§ 3641 (3d ed. 2023). Courts can and do "retain[] removed cases on the basis of
diversity jurisdiction after they have inquired into the validity of a state law
transaction." *Id.*

22.    "Because of their similarity, assignments which destroy diversity and
assignments which create diversity should be analyzed under the same standard."
*Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990); *see id.* at 183–84
(relying on analysis formulated in *Kramer v. Caribbean Mills*, 394 U.S. 823 (1963)).
When determining whether assignments are a tactic to defeat or create jurisdiction,
courts consider various factors. *See Att'ys Tr.*, 93 F.3d at 595–96; *FNBN-Rescon I
LLC v. Ritter,* 2012 WL 3929950, at *4–5 (D. Nev. Sept. 6, 2012). These factors
need not all be present but are examined to determine "whether, under a totality of
the circumstances, an assignment or transfer is improperly or collusively made."
*FNBN*, 2012 WL 3929950, at *5 (citing *Reinhart Oil & Gas, Inc. v. Excel
Directional Techs., LLC*, 463 F. Supp. 2d 1240, 1245 (D. Colo. 2006)).

23.    Such factors include (1) whether there were good business reasons for
the assignment; (2) did the assignee have a prior interest in the item or was the
assignment timed to coincide with commencement of litigation; (3) was there
consideration given by assignee; (4) completeness of the assignment; and (5) was
there an admission that the motive was to create or destroy jurisdiction. *See E. I.*

*duPont de Nemours & Co. v. Agfa NV*, 2018 WL 7283319, at *20 (E.D. Va. Oct. 30, 2018) (citing *FNBN*, 2012 WL 3929950, at *4).  It is clear that several of these factors are present here, even just from the face of the pleadings.

24.    It appears that Rajiv D. Parikh, Plaintiffs' counsel in this action, registered as a lobbyist for Atlas and may have advocated for these amendments to Daniel's Law.  (*See* **Ex. C**.)

25.    ***Alleged Assignments Have No Legitimate Business Purpose***.  Atlas did not exist when Daniel's Law was passed in November 2020; Atlas incorporated as a Delaware entity on April 27, 2021.  (**Ex. D**.)  When passed, Daniel's Law did not allow for "Covered Persons" to assign their claims and the statute gave courts discretion over whether to impose damages for any violation of the act.  *See* N.J.S.A. 56:8-166.1 (2022).  That changed in 2023, when the law was amended.

26.    It appears that Plaintiffs' counsel and Atlas advocated for changes to the law so that it could send tens of thousands of purported "nondisclosure notices" to hundreds of companies, followed by dozens of lawsuits on behalf of nearly 20,000 individuals in each lawsuit.  Indeed, Atlas has filed approximately over 150 similar lawsuits to date wherein it purports to be acting on behalf of nearly 20,000 alleged assignors in each suit.

27.    ***The Alleged Assignments Are For Litigation Purposes***.  Atlas had no interest in any of these claims before the alleged assignments because it is not a

"Covered Person."  In fact, it did not even register to do business in New Jersey until January 12, 2024.  (*See* **Ex. E.**)

28.     On or about mid-January 2024, Constella began receiving torrents of email messages from Atlas-email addresses.  (*See, e.g.*, Compl. ¶ 55.)  Nine months later, Plaintiffs brought this Action.

29.     ***The Assignments At Issue Are Likely Partial Assignments.***  Upon information and belief, some, if not all, of the 16,854 alleged assignments (if they even occurred) are partial assignments.  It is implausible that the Alleged Assignors would have completely assigned their rights (including to financial recovery and to injunctive relief to their benefit) to Atlas.  Courts view these types of partial assignments critically, and as red flags, for collusive efforts to defeat diversity.  *See Slater v. Republic-Vanguard Ins. Co.*, 650 F.3d 1132, 1135 (8th Cir. 2011) (collecting cases in which "federal courts have disregarded assigned or retained interests" when "considering whether a partial assignment created or destroyed diversity").

30.     Even complete assignments, however, are disregarded amidst circumstances like those presented here.  *See, e.g.*, *Nat'l Fitness Holdings, Inc. v. Grand View Corp. Ctr., LLC*, 749 F.3d 1202, 1208 (10th Cir. 2014) (ruling that even "absolute" transfers in interest will not stop a court from concluding that assignments were "improperly or collusively made" to defeat jurisdiction); *E. I. duPont*, 2018

WL 7283319, at *20–24 (finding even a complete assignment of patent rights "was made improperly to defeat th[e] Court's jurisdiction").

31.     To the extent the Court believes that the citizenship of the Alleged Assignors is relevant, Constella notes that the Complaint alleges that they are all "Covered Persons" under Daniel's Law.  Therefore, Constella believes such persons are citizens of New Jersey.  *See* N.J.S.A. 40A:14-122:8; N.J.S.A. 52:14-7a. Moreover, nothing in the Complaint suggests that the Alleged Assignors are citizens of Delaware or California, where Constella is a citizen.

32.     If the Court has any doubts about its diversity jurisdiction, Constella respectfully requests that the Court allow it to conduct jurisdictional discovery into the nature of and circumstances surrounding the assignments that Atlas allegedly received.  *See, e.g.*, *Lincoln Ben.*, 800 F.3d at 108 (district courts can order jurisdictional discovery); *Hagenbaugh v. Nissan N.A.*, 2022 WL 676277, at *4 (M.D. Pa. Mar. 7, 2022) (allowing a removing defendant to take jurisdictional discovery because the plaintiff challenged allegations in the notice of removal); *see also McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 290 (3d Cir. 2006) (holding that when a party disputes jurisdiction "the court must permit the [invoking party] to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence").

**B.    The Amount In Controversy Exceeds $75,000**

33.    Along with complete diversity, the amount in controversy must exceed $75,000.  28 U.S.C. § 1332(a).  "[S]o long as one plaintiff in this case satisfies the jurisdictional amount, this Court may exercise supplemental jurisdiction over the remaining plaintiffs' claims."  *Burgess v. Bennet*, 2021 WL 1050313, at *5 n.9 (D.N.J. Mar. 19, 2021) (citing 28 U.S.C. § 1367).  When "the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e]' the amount in controversy."  *Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 782 n.2 (3d Cir. 2020) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)) (alterations in original).  Federal jurisdiction is proper "where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," unless "it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount."  *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007).

34.    Estimates of the amount in controversy in removal petitions are not concessions of liability, nor admissions that plaintiffs are entitled to particular damages.  *Schor v. State Farm Fire and Cas. Ins. Co.*, 2015 WL 1230200, at *4 n.1 (E.D. Pa. Mar. 18, 2015); *see Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."); *McPhail v. Deere*

13

& *Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.").

35.   Atlas claims it is the assignee of 16,854 "Covered Persons" who were allegedly subject to violations of Daniel's Law. (Compl. ¶ 27.) Daniel's Law authorizes at least $1,000 in liquidated damages for "each violation" of the act. (*Id.* ¶ 54); *see* N.J.S.A. 56:8-166.1(c)(1). Atlas therefore alleges statutory damages that, under any calculation of violations, dwarf the $75,000 threshold.

36.   Atlas may protest, arguing that if the Court should disregard its citizenship for diversity purposes, it should look not to the aggregated assignments, but to the damages of the individual Alleged Assignors. The Court should reject that position because "citizenship" for diversity purposes is distinct from the amount in controversy requirement. A valid assignment under state law may aggregate the claims (and the value of them) which a plaintiff has the right to bring, but "[t]he existence of federal jurisdiction is a matter of federal, not state law." *Kramer*, 394 U.S. at 829. While Constella disputes the validity of the assignments alleged, Plaintiffs' Complaint alleges that Atlas obtained valid assignments.

37.   The amount in controversy requirement, however, is satisfied even if the Court were to disregard Atlas's aggregated claims because the Individual Plaintiffs meet that threshold themselves. Each one seeks (1) "actual damages, not

14

less than liquidated damages under Daniel's Law, at '$1,000 for each violation,'" (2) "an additional amount in punitive damages, to be determined by the Court, for 'willful noncompliance' as allowed under Daniel's Law," (3) "reasonable attorneys' fees," and (4) "injunctive relief." (Compl. at 25.) Adding together potential statutory, actual, and punitive damages, as well as the value of injunctive relief and attorneys' fees, each Individual Plaintiff has put more than $75,000 in controversy.

### 1. Actual / Statutory Damages

38.    The Individual Plaintiffs seek "actual damages, not less than liquidated damages under Daniel's Law, at $1,000 for each violation." (*Id.*)

39.    The Individual Plaintiffs allege that violations of Daniel's Law occurred due to the alleged disclosure of their respective names plus (1) home addresses and/or (2) unlisted home telephone numbers. (*See, e.g.*, *id.* ¶¶ 31, 57–58, 65–66.) They allege that violations occurred through three types of purported disclosure: (1) disclosure on the Internet, (2) re-disclosure on the Internet and (3) otherwise making protected information available. (*Id.*) Because no case law exists interpreting a "violation" under Daniel's Law, the Complaint can be read to plausibly allege (although Constella disputes this) that each plaintiff suffered a new violation each time that Constella allegedly did not comply with Daniel's Law.

40.    For instance, Sullivan alleges that he sent Constella an email notice on January 27, 2024 (*id.* ¶ 56) and brought this suit on October 17, 2024—nearly eight

months (250 days) after the ostensible deadline to comply with Daniel's Law.  Thus, the Complaint can be plausibly read that Sullivan has alleged (at least) 250 violations of Daniel's Law, totaling $250,000 in just the mandatory liquidated damages.  *See, e.g.*, *Karnes v. Kankakee Hosp., LLC*, 2021 WL 12171751, at *3–4 (C.D. Ill. Sept. 25, 2021) (denying a motion to remand in a case under the Illinois Biometric Information Privacy Act where the plaintiff plausibly alleged more than $75,000 in controversy based on allegations that plaintiff was employed by the defendant for 35 days and had daily collection of her biometrics).

41.    Further, Plaintiffs brought this suit against Constella along with "Richard Roes 1–10 and ABC Companies 1–10,"—totaling 21 defendants—whom they allege "were also involved with the violations described in this Complaint." (Compl. ¶ 42.)  Because Plaintiffs' "claims are against multiple defendants who are jointly liable to the plaintiff," the Court may aggregate those claims to reach the amount in controversy threshold.  *DePrizio v. LTS Realty Co.*, 2006 WL 8449808, at *4 (M.D. Pa. Aug. 24, 2006) (citing Vol. 15 Moore's Federal Practice, § 102.1089(2) (Matthew Bender 3d. 2000)).

42.    Each individual Plaintiff therefore alleges—at a minimum—$21,000 in "liquidated damages."

43.    Those liquidated damages do not account for any other "actual damages" that Plaintiffs may have suffered.  The Individual Plaintiffs allege

16

significant actual damages; for example, they allege that exposure of their information caused them apprehension and concern. (*See, e.g.*, Compl. ¶¶ 18–19 (alleging that the Individual Plaintiffs' and their colleagues' "security and privacy is a frequent topic of discussion and concern")); *Yucis*, 813 F. App'x at 782 n.2 (holding allegations of "pain, suffering, embarrassment, and humiliation" resulting from sexual harassment, as well as incurred attorneys' fees plausibly alleged more than $75,000 in controversy).

## 2. Punitive Damages

44. "[P]unitive damages . . . are part of the amount in controversy calculation." *Atl. Util. Trailer Sales Inc. v. Harco Nat'l Ins. Co.*, 2020 WL 3287129, at *2 (D.N.J. June 18, 2020) (citing *Frederico*, 507 F.3d at 199). Good faith claims for punitive damages "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008). Under New Jersey law, punitive damages max out at "five times the liability of that defendant for compensatory damages or $350,000, whichever is greater." *Harco Nat'l Ins. Co.*, 2020 WL 3287129, at *2 (quoting N.J.S.A. 2A:15-5.14 (2014)).

45. By seeking punitive damages, each Plaintiff plausibly puts at issue at least $350,000.

### 3. Attorneys' Fees

46. Daniel's Law states that the Court may award "reasonable attorney's fees." N.J.S.A. 56:8–166.1(c)(3). As such, this Court "must consider potential attorney's fees . . . if such fees are available to successful plaintiffs under the statutory cause of action." *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) (citation omitted). "The Third Circuit has noted that attorney's fees can be estimated to be as high as 30% of the final judgment." *Rodriguez v. Burlington Cnty. Corr. Dep't.*, 2015 WL 790521, at *2 (D.N.J. Feb. 25, 2015) (citing *Frederico*, 507 F.3d at 199).

47. As outlined above, the Complaint plausibly alleges compensatory damages and punitive damages that already far exceed the $75,000 threshold for each individual plaintiff. Increasing those damages by another 30 percent to account for attorneys' fees leaves no doubt that the amount in controversy is satisfied.

### 4. Injunctive Relief

48. Daniel's Law permits to the Court to award any "equitable relief" that it "determines to be appropriate." N.J.S.A. 56:8-166.1(c)(4). Plaintiffs request such "equitable relief" including "the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law." (Compl. at 25.)

49.     When assessing the value of injunctive relief, the inquiry concerns the value to the plaintiff.  *See USAA Cas. Ins. Co. v. CIT Bank*, 2018 WL 3213324, at *4 (D.N.J. May 15, 2018) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)).  Here, Plaintiffs' requested equitable relief includes the costs of the "independent expert" that Plaintiffs request.  These costs alone would likely exceed $75,000.  When combined with compensatory damages, punitive damages, and attorneys' fees, the value of prospective injunctive relief doubtless exceeds the amount in controversy threshold.

*        *        *

50.     Accordingly, Constella plausibly pleads here that each Plaintiff has an amount in controversy of more than $75,000.  Through both Atlas as an alleged assignee/aggregator of claims and supplemental jurisdiction over the other Plaintiffs and/or through each Plaintiff standing alone, the amount in controversy for diversity jurisdiction is satisfied.

51.     Because the parties are completely diverse and the amount in controversy exceeds $75,000, the requirements of diversity jurisdiction are satisfied.

## II.     In the Alternative, this Court Has Jurisdiction Under CAFA

52.     In the alternative, this Court has jurisdiction because this matter is either a "class action" or "mass action" under CAFA.

53.     "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Dart*, 574 U.S. at 89 (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)).  Accordingly, "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'"  *Id.* (quoting S. Rep. No. 109–14, at 43 (2005)).

54.     Practically, "CAFA dramatically expanded the role of the federal judiciary in class action litigation, and expressed a clear preference for qualifying class actions to be entertained in federal forums."  *Portillo v. Nat'l Freight, Inc.*, 169 F. Supp. 3d 585, 589 (D.N.J. 2016).  Because "the language of CAFA favors federal jurisdiction over class actions," "no antiremoval presumption attends cases invoking CAFA[.]"  *Id.* at 592 n.9 (quoting *Dart*, 574 U.S. at 89).

## A.     Class Action Requirements Under CAFA

55.     CAFA confers on district courts original jurisdiction over any civil action in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members ("numerosity requirement").  *Standard Fire*, 568 U.S. at 592 (citing 28 U.S.C. §§ 1332(d)(2), (d)(5)(B)).  In addition, to be considered a "class action" under CAFA, the suit must be "filed under rule 23 of the Federal Rules of Civil Procedure or

similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

56.     This suit satisfies all of CAFA's requirements for federal jurisdiction over a class action because (1) there is minimal diversity between the parties; (2) the aggregate amount-in-controversy exceeds $5,000,000; (3) the putative class exceeds 100 members; and (4) the suit is effectively filed as a representative action that implicates Rule 23, and/or under a state-law analogue to Rule 23.

### 1.     Minimal Diversity

57.     CAFA requires minimal diversity among the parties, meaning at least one class member must be a citizen of a different state from at least one defendant. 28 U.S.C. § 1332(d)(2). Under CAFA, a corporation is a citizen of the state "by which it has been incorporated" and the state "where it has its principal place of business." *Id.* § 1332(c)(1).

58.     Because Constella's citizenship (Delaware and California) is different from the citizenship of at least the Individual Plaintiffs (New Jersey) and the Alleged Assignors, the minimal diversity requirement is satisfied.

### 2.     Aggregate Amount In Controversy

59.     CAFA requires that the amount-in-controversy exceed $5,000,000 for the entire putative class in the aggregate, exclusive of interest and costs.  *See id.* § 1332(d)(2).

21

60.    As explained, Plaintiffs allege at minimum $1,000 in liquidated damages against Constella through Atlas's 16,854 Alleged Assignors, as well as the individual claims of Doe 1, Doe 2, and the Individual Plaintiffs.  (*See supra* ¶¶ 35–50.)  This satisfies the $5,000,000 CAFA minimum, without even considering additional actual damages, punitive damages, attorneys' fees, injunctive relief *or* the allegations against the additional 20 defendants.

### 3.    Class Action Numerosity

61.    CAFA requires that "the number of members of all proposed plaintiff classes in the aggregate" must be at least 100 members.  28 U.S.C. § 1332(d)(5).  In counting such members, "the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action."  *Id.* § 1332(d)(1)(D).  The numerosity requirement, for jurisdictional purposes, is satisfied here.

62.    "[T]he Third Circuit found that partial assignees can be counted as class members when evaluating whether a class meets Rule 23's numerosity requirement."  *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2020 WL 5211035, at *10 (E.D. Pa. Sept. 1, 2020) (citing *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 251–52 (3d Cir. 2016)).

63.    Here, the proposed absent class consists of 16,854 members.  Thus, the numerosity requirement for the purposes of CAFA jurisdiction is satisfied.

### 4.  Applicable Law

64.  Under CAFA, "the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

65.  "If a complaint does not satisfy CAFA's jurisdictional requirements on its face, [courts] must cut through any pleading artifice to identify whether the case is ***in substance*** an interstate class action." *Erie Ins. Exch. v. Erie Indem. Co.*, 68 F.4th 815, 819 (3d Cir. 2023) (emphasis added).  The U.S. Supreme Court has warned "that courts must be careful not to 'exalt form over substance' when determining whether a case satisfies CAFA's jurisdictional requirements.'" *Id.* at 819–20 (quoting *Standard Fire*, 568 U.S. at 595); *see also Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017) ("[A]llowing class-action plaintiffs to avoid federal jurisdiction simply by omitting explicit reference to the class-action rule they intend to proceed under would promote the kind of procedural gaming CAFA was enacted to prevent."); *Badeaux v. Goodell*, 358 F. Supp. 3d 562, 567 (E.D. La. 2019) (citing *Williams*, 845 F.3d at 901 ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class action.")).

66.     Here, the Complaint is "in substance a class action, . . . notwithstanding [Plaintiffs'] artificial attempt to disguise the true nature of the suit." *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013) (denying remand under CAFA where plaintiff, an assignee of class rights, unsuccessfully attempted to omit reference to Rule 23 in the pleadings to avoid federal jurisdiction). Atlas (and the Individual Plaintiffs) purport to bring claims on behalf of 16,854 individuals (*see supra* ¶ 35); alleges commonality among the claims (*see* Compl. ¶¶ 48–61 ("Facts Common to All Counts")).[2]    Further, although Plaintiffs do not cite any joinder rule, the Complaint does not demonstrate how Plaintiffs could join 16,854 claims in a single suit, absent the class action mechanism.

67.     New Jersey Court Rule 4:32 provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

68.     Courts have held that a state-law analogue statute or rule is, in effect, a class action, where the rule "resembles" an analogue of Rule 23. *See, e.g.*, *Pac.*

---

[2] Constella does not concede that Plaintiffs can establish any element of class certification.

*Coast Fed'n of Fishermen's Ass'n, Inc. v. Chevron Corp.*, 2023 WL 7299195, at *1 (N.D. Cal. Nov. 1, 2023) ("The complaint thus pleads a representative action authorized by section 382 of the California Code of Civil Procedure," which "allows a plaintiff to sue and seek relief on behalf of absent parties," and thus "resembles a damages class action under Rule 23 of the Federal Rules of Civil Procedure.").

69.    Thus, all requirements for CAFA jurisdiction over a class action are met.

### B.    Mass Action Requirements Under CAFA

70.    In the alternative, or in addition, to finding that this is a class action under CAFA, removal is proper because the instant case is a "mass action" under CAFA.

71.    "Congress created the mass action in 2005," when it passed CAFA, "a mostly jurisdictional statute." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 318 (3d Cir. 2022). "CAFA's drafters feared that large-scale state litigation—deemed mass actions and brought under non-class joinder and consolidation rules—would evade CAFA's removal provisions simply because [such] litigation was not pursued under class action rules. [] So Congress included mass-action provisions in CAFA." *Id.* (citations and quotation marks omitted).

72.    CAFA defines a "mass action" as

> any civil action (except a civil action within the scope of
> section 1711(2)) in which monetary relief claims of 100 or

more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [§ 1332(a)].

28 U.S.C. § 1332(d)(11)(B)(i).  In short, "mass actions are deemed to be class actions removable under 28 U.S.C. § 1332(d)(2)–(10) if they otherwise meet the provisions of those paragraphs."  *OptumRX*, 43 F.4th at 319 (citing 28 U.S.C. § 1332(d)(11)(A)).

73.    "In extending CAFA to large individual state court cases that are functionally indistinguishable from class actions, the mass action provision prevents plaintiffs' counsel from avoiding CAFA's expanded federal jurisdiction by simply choosing not to seek class certification."  *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1198 n.32 (11th Cir. 2007) (quoting S. Rep. No. 109–14 at 47 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 44 (noting that "mass actions are simply class actions in disguise")).

74.    Here, federal jurisdiction exists under CAFA for a mass action that satisfies (1) the class action requirements of (a) minimal diversity and (b) the $5,000,000 *aggregate* amount-in-controversy; (2) numerosity for a mass action; and (3) the $75,000 *individual* amount-in-controversy requirement.

75.    Under CAFA, "the term 'mass action' means any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly

26

on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i).

76.     "The question is not whether 100 or more plaintiffs answer a roll call in court, but whether the 'claims' advanced by 100 or more persons are proposed to be tried jointly." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008).   "Where a single complaint joins more than 100 separate claims involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial." *Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324, 329 (3d Cir. 2017).

77.     Here, Atlas alleges that it is the assignee for "monetary relief claims of 100 or more persons," 28 U.S.C. § 1332(d)(11)(B)(i)—specifically, the "monetary relief claims" of 16,854 Assignors.  (*See* Compl. ¶¶ 27, 59.)  Doe 1, Doe 2, and the Individual Plaintiffs also each allege "monetary relief claims."

78.     In the Third Circuit,

> [i]t is blackletter law that "the assignee steps into the shoes of the assignor." 29 Williston on Contracts § 74:56 (4th ed. 1999) ("Simply stated, the assignee steps into this pair of the assignor's shoes absolutely, and, if the shoes are dirty, then that dirt sullies the assignee no less than it did the assignor."). As a result, "[a]n assignee's right against the obligor is subject to all . . . defenses thereto . . . ." Restatement (First) of Contracts § 167(1) (1932). These defenses include not only defenses to the merits of the claim, but defenses based on where and how the claims may be prosecuted.

*Winn-Dixie Stores, Inc.*, 2020 WL 5211035, at *11.

79.    Accordingly, "the Third Circuit found that partial assignees can be counted as class members when evaluating whether a class meets Rule 23's numerosity requirement." *Id.* at *10 (citing *In re Modafinil*, 837 F.3d at 251–52 *as amended* (3d Cir. Sept. 29, 2016) ("[P]artial assignees are appropriately considered to be members of a class.")); *see also id.* at 252 ("*Fine Paper Litigation* [, 632 F.2d 1081, 1089 (3d Cir. 1980)] envisioned the class action mechanism as a proper tool for partial assignees to participate in the lawsuit[.]").

80.    This case does not involve one plaintiff suing on behalf of a group of unnamed individuals. *See, e.g.*, *Mississippi ex rel. Hood v. AU Optronics Corp*., 571 U.S. 161 (2014) (involving *parens patriae* action brought by state attorney general on behalf of state's citizens); *Erie Ins. Exch.*, 68 F.4th 815 (involving unincorporated association bringing suit "to benefit all members of" the association).

81.    Rather, in this case, Atlas brings each claim for relief on behalf of 16,854 separate individuals, the Alleged Assignors.   (*See* Compl. ¶¶ 27, 59.) Because Atlas "steps into the shoes of" each Alleged Assignor, *see* 29 Williston on Contracts § 74:56, Atlas's "right against" any defendant is "subject to all defenses" that any defendant may have had against any Assignor, including "defenses based on where and how the claims may be prosecuted." *Winn-Dixie Stores*, 2020 WL

5211035, at *11 (citing Restatement (First) of Contracts § 167(1) (1932)) (ellipses omitted; emphasis added).

82.    That Atlas did not name each of the 16,854 Alleged Assignors in the case caption does not change the fact that Atlas is not suing on its individual behalf, but rather for the benefit of each specific Alleged Assignor.

83.    As indicated above, each individual's alleged claim appears to exceed $75,000. (*See supra* ¶¶ 35–51.)

### C.    None of the CAFA Exceptions Apply

84.    CAFA provides two mandatory exceptions and one discretionary exception to the application of federal jurisdiction for class actions.  *See* 28 U.S.C. §§ 1332(d)(3)–(4).  None of these exceptions applies here.  Each CAFA exception requires, as a starting point, an in-state defendant.  *Id.* (requiring either "significant relief" to be sought from an in-state defendant (local controversy exception), or requiring the "primary defendant" to be an in-state one ("home state" and discretionary exceptions)).

85.    Here, Constella is not a citizen of New Jersey, and the citizenship of the unidentified Defendants is disregarded.  Thus, none of the CAFA exclusions apply.

86.    Further, none of the exceptions for federal jurisdiction over a "mass action" apply here.  *See id.* § 1332(d)(11)(B)(ii).  Specifically, none of the claims herein were joined upon motion of a defendant, the claims are not asserted on behalf

of the public, and the claims in the Complaint have not been consolidated or coordinated solely for pretrial proceedings.

87.     In addition, the claims in this action do not arise from a single "event or occurrence" in New Jersey that allegedly resulted in injuries in New Jersey or in States contiguous to New Jersey.

88.     Accordingly, none of the class or mass action exceptions to CAFA jurisdiction apply here.

## REMOVAL IS PROCEDURALLY PROPER

89.     Section 1446 also sets forth certain procedural requirements for removal, all of which are met here:

90.     ***Removal Is Timely***.  A notice of removal may be filed within 30 days after the defendant receives a copy of the initial pleading, motion, or other paper from which it may be ascertained that the case is removable.  *Id.* § 1446(b).  This case was filed on October 17, 2024, and served upon Constella on October 21, 2024. (*See* **Ex. A**.)  This Notice of Removal is thus timely filed.

91.     ***Removal to Proper Court***.  This Court is part of the "district and division within which" this action was filed—Essex County, New Jersey.  *See* 28 U.S.C. § 1446(a).

92.     ***Pleading and Process***.  Under 28 U.S.C. § 1446(a), a "copy of all process, pleadings, and orders served upon" Constella are attached to this Notice of

Removal.  (*See* **Ex. A**.)  Constella has not answered or otherwise filed a response to the Complaint.

93.     ***Notice to State Court***.  A copy of this Notice of Removal is being filed with the Clerk of the Superior Court of New Jersey, Law Division, Essex County, and is being served on counsel of record, consistent with 28 U.S.C. §§ 1446(a), (d).

94.     Constella hereby reserves all defenses and objections to the Complaint, including but not limited to: lack of personal jurisdiction, improper venue, *forum non conveniens*, insufficiency of process, insufficiency of service of process, failure to join necessary parties, lack of standing, and failure to state a claim.

**WHEREFORE**, Constella removes this action to this Court for further proceedings according to law.

Dated: November 18, 2024                    Respectfully Submitted,

*/s/ Lauri A. Mazzuchetti*
Lauri A. Mazzuchetti
Whitney M. Smith
Aaron J. Gold
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Tel: (973) 503-5900
Fax: (973) 503-5950
lmazzuchetti@kelleydrye.com
wsmith@kelleydrye.com
agold@kelleydrye.com

*Counsel for Defendant*
*Constella Intelligence, Inc.*

31

## LOCAL CIVIL RULE 11.2 STATEMENT

Under Local Rule 11.2, it is hereby stated that the matter in controversy between the parties is not subject to any other action pending in any other Court or of a pending arbitration proceeding other than the state court action removed by this Notice: ESX-L-007212-24 in the Superior Court of New Jersey, Law Division, Essex County.


Dated: November 18, 2024                    */s/ Lauri A. Mazzuchetti*
                                            Lauri A. Mazzuchetti

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ATLAS DATA PRIVACY
CORPORATION, *as assignee of
individuals who are covered persons*,
JANE DOE-1, *a law enforcement officer*,
JANE DOE-2, *a law enforcement officer*,
EDWIN MALDONADO, SCOTT
MALONEY, JUSTYNA MALONEY and
WILLIAM SULLIVAN,

              Plaintiffs,

    v.

CONSTELLA INTELLIGENCE, INC.,
RICHARD ROES 1–10, *fictitious names
of unknown individuals* and ABC
COMPANIES 1–10, *fictitious names of
unknown entities*,

              Defendants.

Case No. 2:24-cv-10571

**DECLARATION OF LAURI A.
MAZZUCHETTI**

I, Lauri A. Mazzuchetti, declare as follows:

1.    I am a citizen of the United States, over 18 years of age.  If called as a witness, I could and would competently testify as to the facts declared herein.

2.    I am a partner of the law firm Kelley Drye & Warren LLP, counsel for Constella Intelligence, Inc. ("Constella"), defendant in the above-captioned action.

3.    Attached hereto as **Exhibit A** is a true and correct copy of documents served and filed in *Atlas Data Privacy Corporation, et al. v. Constella Intelligence, Inc., et al.*, ESX-L-007212-24 (N.J. Super. Ct.).

4.     Attached hereto as **Exhibit B** is a true and correct copy of a Delaware Entity Search.

5.     Attached hereto as **Exhibit C** is a true and correct copy of the Annual Report of Governmental Affairs Agent, submitted by Genova Burns LLC on February 14, 2024.

6.     Attached hereto as **Exhibit D** is a true and correct copy of the certificate of incorporation of the entity currently named Atlas Data Privacy Corporation ("Atlas"), and relevant subsequent corporate documents.

7.     Attached hereto as **Exhibit E** is a true and correct copy of records from New Jersey Department of Treasury Division of Revenue and Enterprise Services, authorizing Atlas to conduct business in New Jersey, dated January 12, 2024.

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 18, 2024                      */s/ Lauri A. Mazzuchetti*
                                              Lauri A. Mazzuchetti

# EXHIBIT A

**PEM LAW LLP**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
Jessica A. Merejo (288592020)
1 Boland Drive, Suite 101
West Orange, NJ 07052
Tel.: (973) 577-5500
rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

*Attorneys for Plaintiffs Atlas Data Privacy
Corporation, Jane Doe-1, a law
enforcement officer, Jane Doe-2, a law
enforcement officer, Edwin Maldonado,
Scott Maloney, Justyna Maloney, and
William Sullivan*

**BIRD MARELLA RHOW
LINCENBERG DROOKS NESSIM LLP**
Ekwan E. Rhow (*pro hac vice* to be filed)
Elliot C. Harvey Schatmeier (*pro hac vice* to
be filed)
1875 Century Park East, 23rd Fl
Los Angeles, CA 90067
Tel.: (310) 201-2100
erhow@birdmarella.com
ehs@birdmarella.com

**MORGAN & MORGAN P.A.
COMPLEX LITIGATION GROUP**
John A. Yanchunis (*pro hac vice* to be filed)
Ryan J. McGee (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer,* EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, and WILLIAM SULLIVAN,<br><br>Plaintiffs,<br><br>v.<br><br>CONSTELLA INTELLIGENCE, INC., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, ESSEX COUNTY DOCKET NO.: ESX-L-_____-24<br><br>**CIVIL ACTION**<br><br>**COMPLAINT** |

Plaintiffs Atlas Data Privacy Corporation ("Atlas"), as the assignee of individuals who are Covered Persons under Daniel's Law, along with Jane Doe-1 (a law enforcement officer), Jane Doe-2 (a law enforcement officer), Edwin Maldonado, Scott Maloney, Justyna Maloney, and William Sullivan (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## INTRODUCTION

1.      In these tumultuous times, it is critical that the most sensitive personal information of current and former public servants be protected from unwarranted disclosure.  As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors—and their families—with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2.      This complaint seeks to protect those important rights against companies brokering data and choosing profit and commercial gain over a critical public interest and the unequivocal mandate of the law.  Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve (and have served) critical judicial and law enforcement roles.

3.      The Legislature and Governor unanimously agree that the basic safety of those who serve—and their families—must be assured.  Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of these public servants.  Our judges, law enforcement officers, and prosecutors should receive the

full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4.      With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law.  Consistent with the statutory scheme, Atlas brings this action as an assignee for certain individuals, including many family members of law enforcement officers and prosecutors.  Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## **BACKGROUND**

### **Passage of Daniel's Law in New Jersey**

5.      In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was murdered by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just 20 years old and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents.  By the time his mother, a Judge, came to the door to check on what happened, the killer had fled.  But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.      During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and he went to their home that day intending to kill her. Investigators eventually connected this attack with the same perpetrator's shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman.  Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to the case that was pending before Daniel's mother.

7.      Critically, the gunman was able to find the home addresses of his murder victims through the various people finder resources available on the Internet,[1] the same kind of data broker services at issue in this case.

**New Jersey Passes Daniel's Law in 2020**

8.      In response to Daniel's murder, New Jersey swiftly enacted Daniel's Law in November 2020.  P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1. Daniel's Law allows current and former public servants—including judges, law enforcement officers, and prosecutors—and their eligible family members (*i.e.*, "covered persons") to send written nondisclosure requests to data brokers.  Once a 10-business day period following such a request has passed, the data broker is prohibited from disclosing or otherwise making available the name and home address or unpublished home telephone number of the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of judges and prosecutors.

9.      Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

10.     Data brokers must cease disclosure of this protected information within 10 business days of receiving a written nondisclosure request from a covered person.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

11.    To facilitate the enforcement of Daniel's Law, the New Jersey Legislature expressly provided that an enforcement action could be brought by a covered person or by the covered person's assignee.  N.J.S.A. 56:8-166.1(b).

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

12.    Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety . . . [a] judicial system cannot and should not live in fear."[2]

13.    The federal bill, which had broad bipartisan support in both the House and Senate, protected the personally identifiable information of judges and their immediate family from disclosure by data brokers.  It also allowed federal judges to redact their personal information displayed on federal government websites.

14.    In December 2022, the U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**Violence Against Police Officers and Judges Has Not Stopped**

15.    Despite these efforts, violence against judges, law enforcement officers, and prosecutors remains a continuing and serious threat.  These public servants put their lives on the line every day, which is clearly exhibited by the numerous horrific stories of violence beyond the

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.

murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers while they were inside with their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]  On the contrary, the officers were targeted specifically because they chose to go into public service and protect their community.

16.    More recently, a disgruntled litigant hunted down and killed a Maryland Judge at his home, after an adverse child custody ruling.[6]  This killing followed a similar tragedy in Wisconsin in 2022, where the perpetrator killed a retired Wisconsin Circuit Court Judge out of spite for his handling of a criminal case in 2005.[7]

17.    These violent incidents demonstrate the risk to public servants and their families resulting from the open sale and dissemination of their most personal information, including their home addresses and/or unpublished home telephone numbers.  These incidents also demonstrate the risk to the broader community should public officials be denied their statutory privacy rights. The risk that one might be violently targeted at their home may disincentivize individuals from pursuing a career in public service.  This undermines the public interest—as the State and federal governments have recognized in passing Daniel's Law and its federal counterpart.

---

[5] https://www.forbes.com/sites/jemimamcevoy/2020/09/18/shooters-open-fire-on-home-of-new-jersey-police-officers-in-targeted-attack-chief-says/.
[6] https://www.cnn.com/2023/10/20/us/maryland-judge-killing-investigation-andrew-wilkinson/.
[7] https://www.cnn.com/2022/06/04/us/wisconsin-judge-killed-targeted-attack/.

## **THE PARTIES**

### **The Individual Plaintiffs**

18.    Plaintiff JANE DOE-1 ("Officer Doe-1"), whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children.  Earlier in her career, Officer Doe-1 was the subject of a death threat from a hostile inmate.  The inmate stated that they intended to kill Officer Doe-1, and further implied that they would rely upon a particular private investigator to track down Officer Doe-1's home address to facilitate the murder.  This death threat was investigated and considered credible enough to result in a successful criminal prosecution.   Part of Officer Doe-1's current duties include working in her correctional facility's law library, where inmates have access to the Internet including online data broker websites and services.  Officer Doe-1 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the facility's administrative staff.  The most effective ways to safeguard the security and privacy of their home addresses—for their own safety and that of their family members—is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-1's facility.

19.    Plaintiff JANE DOE-2("Officer Doe-2") , whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children. Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate. The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder. This death threat was investigated and considered credible enough to result in a successful criminal prosecution. Part of Officer Doe-2's current duties include

working in her correctional facility's law library, where inmates have access to the Internet including online data broker websites and services. Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff. The most effective ways to safeguard the security and privacy of their home addresses—for their own safety and that of their family members—is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

20.     Plaintiff Officer EDWIN MALDONADO ("Detective Maldonado"), joined the Plainfield, New Jersey police department as a patrol officer in 2000.  After a few months on the job, he was assigned to street crimes, where he excelled at field work.  In 2005, he became a Detective with Plainfield's major crimes unit and joined a federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey.  He worked with the task force for the next two years. During that time period, he received multiple credible death threats from MS-13 members. Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work.  In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead.  They intended to burn down her building with her inside, but set fire to an adjacent building by mistake.  Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps.  Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

21.     Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer
JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers
currently serving with the Rahway, New Jersey Police Department.  They live together in New
Jersey with their two young children.  In April 2023, Officer Maloney responded to a routine call
of a suspicious individual outside the Motor Vehicle Commission in Rahway.  The individual was
an online content creator who often solicits police contact and then films himself debating
constitutional rights with the responding officers.  A subset of the content creator's audience is
vocally anti-police and videos posted to his social media channel have historically been the source
of harassment and intimidation campaigns directed at the officers involved.  In this case, Officer
Maloney and several other responding officers were filmed discussing a number of legal issues
with the content creator, including whether or not the content creator was required to take his hands
out of his pockets to show that he was unarmed.  Overall, the encounter was routine and ended
uneventfully.

22.     The resulting video footage was selectively edited and posted to YouTube and
TikTok.  Almost immediately upon the video being posted, Officer Maloney was targeted by
followers of the channel and other individuals who viewed the video.  Sergeant Maloney was
quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to
their relationship as a married couple and his own status as a police officer.  Web links to data
broker websites publicly disclosing the Maloney family's home address and unpublished home
telephone numbers were posted along with explicit death threats and calls for violence, resulting
in dozens of threatening phone calls and text messages.

23.     One of the text messages sent to Sergeant Maloney demanded money and stated
that if Sergeant Maloney did not comply then his family would "pay in blood."  The unknown

messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

24. Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police. Responding officers arrested two men—who were armed—for unlawful possession of a firearm. Video surveillance captured by nearby houses showed the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were home at the time.

25. Plaintiff Officer WILLIAM SULLIVAN ("Officer Sullivan"), is a 19-year veteran of the New Jersey Department of Corrections. Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole. During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service. Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facilities. These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and their family members. Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents

where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

### Plaintiff Atlas and its Assignors

26.     Plaintiff ATLAS DATA PRIVACY CORPORATION ("Atlas")  is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

27.     As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 16,854 individuals who are all "Covered Persons" under Daniel's Law (together, the "Covered Persons" and each a "Covered Person"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

28.     Each Covered Person is an (a) active, formerly active, or retired judicial officer, law enforcement officer, or child protective investigator in the Division of Child Protection and Permanency, or prosecutor, as those terms are defined in N.J.S.A. 47:1A-1.1; or (b) immediate family member residing in the same household as such judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, or prosecutor. Thus, each individual meets the definition of "covered person" set forth in Daniel's Law, N.J.S.A. 56:8-166.1.

29.     Each Covered Person resides, works, previously resided or worked in New Jersey, or is a family member residing at the same address as such as a person, and has a claim or claims against Defendants for failing to comply with Daniel's Law.

30.     As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making

available their protected information on one or more of Defendants' websites or through other methods of disclosure.

31.     Defendants have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

32.     In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas, in writing, as permitted under the statute. Such assignments expressly and "irrevocably assign to Atlas or a designated affiliate of Atlas (the 'Assignee') the exclusive right to civil enforcement of all claims" under Daniel's Law.

33.     Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other Covered Persons.  Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, has been to increase the safety and well-being of their members and their members' families by helping those members understand and assert the rights provided to them by the law.

34.     Upon signing up for Atlas, a Covered Person is asked a series of questions to collect required personal information and qualify his or her eligibility under Daniel's Law.  Once eligibility is confirmed, the Covered Person is shown a page explaining how the Atlas platform works:

# How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

**1**   **We identify** data brokers that may be disclosing your personal information. As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

**2**   **You select** the data brokers to whom you want to send takedown notices. We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

**3**   **You review** takedown notice templates. AtlasMail provides you with templates for takedown notice emails.

**4**   **You send** takedown notices. Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

**Back**                                                                      **Next**

35.     AtlasMail is an email service operated by Atlas.  Upon signing up with Atlas, each Covered Person receives his or her own AtlasMail account, with a unique inbox address (*e.g.*, john.doe23@atlasmail.com) for personal use.  A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:



36.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the Covered Person is then presented with a page on which he or she can review his or her home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to.  On this page the Covered Person can choose whether or not to send takedown notices.  If the Covered Person chooses not to send takedown notices to the recommended list, they can select individual recipients at a later page

(as shown in the example copied below).  Here, each of the Individual Plaintiffs and Covered

Persons sent Defendants a takedown notice.



37.     Any reply or response back from a data broker to the Covered Person is received and displayed in their AtlasMail inbox.  AtlasMail is a fully-featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:





**Redaction/Nondisclosure Request Confirmation**

| | |
|---|---|
| **To** | john.doe23@atlasmail.com |
| **From** | privacy@exampledatabroker.com |
| **Date** | Fri, Jan 26, 2024 8:14 PM |

Dear John,

Thank you for your redaction/nondisclosure request pursuant New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act") and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended, "Chapter 226"). We are writing to confirm that Example Data Broker Inc. will honor your request as required by the Act and Chapter 226.

Sincerely,

Example Data Broker Inc.

Reply    Forward

38.     With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.

39.     Because this lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight, Atlas has not included the Covered Persons' personal information in this public filing.  However, Atlas will work with the Court and Defendants to implement an appropriate protective order and then provide Defendants with the written

assignments and relevant information for each of the Covered Persons.  Our courts have already approved this privacy-protecting approach.[8]

40.     In order to facilitate the provision of the Covered Persons' relevant information to Defendants pursuant to an appropriate protective order, Plaintiffs have provided Defendants with a proposed Protective Order with service of this Complaint.

**Defendants**

41.     Defendant Constella Intelligence, Inc. ("Constella") is a Delaware corporation that has a principal place of business at 201 Redwood Shores Parkway, Suite 345, Redwood City, California 94065, and transacts business within the State of New Jersey.  Constella discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of Covered Persons.

42.     Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

---

[8] For example, the Court recently held in another Daniel's Law action that allegations similar to those asserted here pleaded "sufficient facts to show that the assignors are covered persons under Daniel's Law," and "in fact have standing," noting the anticipated production of Covered Persons' information pursuant to an appropriate protective order.  *Atlas Data Privacy Corp., v. Attom Data Solutions, LLC, et al.*, Docket No.: MER-L-273-24 (Law Div., June 20, 2024) (denying motion to dismiss).

43.     Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  These websites include constellaintelligence.com.

44.     In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).  The following is a redacted example of the detailed information provided by Defendants,[9] in violation of Daniel's Law:



45.     Daniel's Law was passed to protect public servants and their families from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

---

[9] Consistent with the mandate of Daniel's Law and the public policy considerations underpinning Rule 1:38-7, personal information in the search results has been redacted from the exemplar screenshots included herein.

## JURISDICTION AND VENUE

46.     This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

47.     Venue is proper pursuant to R. 4:3-2, in that Essex County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business.  In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

48.     As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

49.     Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

50.     Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

51.     This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

52.     Daniel's Law was amended in 2023, as P.L. 2023, c. 113.  The amendment was

passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was

thereafter signed by the Governor on July 20, 2023.

53.     Certain provisions of the amended law, including changes to <u>N.J.S.A.</u> 56:8-166.1,

went into effect immediately.

54.     As of July 20, 2023, Daniel's Law as codified in <u>N.J.S.A.</u> 56:8-166.1 provided:[10]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and
> not later than 10 business days following receipt thereof, a person, business,
> or association shall not disclose or redisclose on the Internet or otherwise
> make available, the home address or unpublished home telephone number
> of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this
> section shall be liable to the covered person, or the covered person's
> assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
>> (1) actual damages, but not less than liquidated damages computed
>> at the rate of $1,000 for each violation of this act;
>>
>> (2) punitive damages upon proof of willful or reckless disregard of
>> the law;
>>
>> (3) reasonable attorney's fees and other litigation costs reasonably
>> incurred; and
>>
>> (4) any other preliminary and equitable relief as the court determines
>> to be appropriate.
>
> d.  For the purposes of this section:
>
>> . . . "Disclose" shall mean to solicit, sell, manufacture, give, provide,
>> lend, trade, mail, deliver, transfer, post, publish, distribute, circulate,
>> disseminate, present, exhibit, advertise or offer, and shall include
>> making available or viewable within a searchable list or database,
>> regardless of whether a search of such list or database is actually
>> performed."

---

[10] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

55.     Starting on or about January 22, 2024, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

56.     For example, a true and correct copy of the email directly from Plaintiff Sullivan (with personal information redacted) is pasted here:

## Data Subject Request - Redaction/nondisclosure Request

| | |
|---|---|
| **From** | William Sullivan ████████████████████ |
| **To** | privacy@constellaintelligence.com |
| **Date** | Sat, Jan 27, 2024 8:34 AM UTC-0500 |

Constella Intelligence
January 27, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: William Sullivan

Home Address: ████████████████████████

Sincerely,
William Sullivan

57.     Defendants failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.  Thus, Defendants' disclosure or redisclosure of protected information of the Individual Plaintiffs and Covered Persons following the statutory takedown period of ten (10) business days violates Daniel's Law.

58.     Upon information and belief, even as of the date of this filing, Defendants still refuse to fully comply with Daniel's Law and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, re-disclosed or otherwise made available, despite Defendants' receipt of requests for nondisclosure more than ten business days ago.

59.     All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs, who assert their claims directly in this action) have assigned in writing their claims against Defendants to Atlas.  All of the assignments were completed in writing before the date of the filing of the initial Complaint.

60.     Following the entry of a protective order filed in this Court, Plaintiffs will provide under a confidential designation a full and complete list of the following:

a.  Names of each of the 16,854 assignors referenced in paragraph 27; and

b.  The factual basis for the person to be considered a "Covered Person" as defined in N.J.S.A. 56:8-166.1(d), that is, a judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, as those terms are identified in N.J.S.A. 47:1A-1.1 or prosecutor and any immediate family member residing in the household of individuals in these categories.

61.     The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

## COUNT ONE

### (Daniel's Law)

62.     The allegations of the Complaint set forth above are incorporated herein as if set forth at length.

63.     The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

64.     Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

65.     Upon information and belief, even as of the date of this filing, Defendants still refuse to fully comply with Daniel's Law and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, re-disclosed or otherwise made available, despite Defendants' receipt of requests for nondisclosure more than ten business days ago.

66.     Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

67.     Defendants' continued disclosure in violation of Daniel's Law, despite having received notice as required under the statute, constitutes willful or reckless disregard of the law.

68.     As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request that the Court enter all available and appropriate legal and equitable relief.

**WHEREFORE**, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E. Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's Law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G. Awarding such other and further relief against Defendants as the Court deems equitable and just.

Respectfully submitted,

**PEM LAW LLP**

Dated: October 16, 2024 By: /s/*Rajiv D. Parikh*

Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
1 Boland Drive, Suite 101
West Orange, NJ 07052
Tel: (973) 577-5500
rparkh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

**MORGAN & MORGAN P.A.**
**COMPLEX LITIGATION GROUP**
John A. Yanchunis (*pro hac vice* to be filed)
Ryan J. McGee (*pro hac vice* to be filed)
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

**BIRD MARELLA RHOW LINCENBERG**
**DROOKS NESSIM LLP**
Ekwan E. Rhow (*pro hac vice* to be filed)
Elliot C. Harvey Schatmeier (*pro hac vice* to
be filed)
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067
Tel: (310) 201-2100
erhow@birdmarella.com
ehs@birdmarella.com

*Counsel for Plaintiffs*

## DESIGNATION OF TRIAL COUNSEL

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

**PEM LAW LLP**

Dated: October 16, 2024                    By: */s/ Rajiv D. Parikh*
                                               Rajiv D. Parikh, Esq.

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated. Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**PEM LAW LLP**

Dated: October 16, 2024                    By: */s/ Rajiv D. Parikh*
                                               Rajiv D. Parikh, Esq.

## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

Pursuant to Rule 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

PEM LAW LLP

Dated: October 16, 2024                By: */s/ Rajiv D. Parikh*_____
                                       Rajiv D. Parikh, Esq.

ESSEX COUNTY - CIVIL DIVISION
SUPERIOR COURT OF NJ
465 MARTIN LUTHER KING JR BLVD
NEWARK          NJ 07102

                              TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (973) 776-9300
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:   OCTOBER 17, 2024
                    RE:     ATLAS DATA PRIVACY C ORPORATIO  VS CONSTELLA INTE
                    DOCKET: ESX L -007212 24

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 1.

     DISCOVERY IS   150 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON MAYRA V. TARANTINO

      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     002
AT:  (973) 776-9300 EXT 57184.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                         ATT: RAJIV D. PARIKH
                         PEM LAW LLP
                         1 BOLAND DR
                         SUITE 101
                         WEST ORANGE     NJ 07052

ECOURTS

Case: 24-8044          Document: 89-2          Page: 66          Date Filed: 01/08/2025

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| Ekwan E. Rhow<br>BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.<br>1875 Century Park East, 23rd Floor<br>Los Angeles, CA 90067<br>  Telephone No:  310-201-2100 | |

| | | |
|---|---|---|
| Attorney For:  Plaintiff | Ref. No. or File No.:<br>5450.3 | |

Insert name of Court, and Judicial District and Branch Court:
SUPERIOR COURT OF NEW JERSEY LAW DIVISION, ESSEX COUNTY

| Plaintiff:  ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons<br>Defendant:  CONSTELLA INTELLIGENCE, INC.; ET AL | |
|---|---|

| PROOF OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number:<br>ESX-L-007212-24 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Complaint; Case Information Statement; Track Assignment Notice; Document Preservation Letter; First Request for the Production of Documents; First Set of Interrogatories; Proposed Protective Order

3.   *a.*  Party served:    CONSTELLA INTELLIGENCE, INC.
    *b.*  Person served:   Amy Stoffel, Authorized to Accept Service for Incorp Services, Agent for Service of Process

4.   Address where the party was served:   3500 South Dupont Highway, Dover, DE 19901

5.   *I served the party:*
    a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Tue, Oct 22 2024 (2) at: 11:12 AM

6.   *Person Who Served Papers:*
    a. Sean Boykevich                      d. *The Fee for Service was:*  $384.85
    b. FIRST LEGAL
       1517 W. Beverly Blvd.
       LOS ANGELES, CA 90026
    c. (213) 250-1111

7.   *I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*



|  |  |
|---|---|
| 10/22/2024 | |
| *(Date)* | *(Signature)* |



PROOF OF
SERVICE

12028719
(5934197)

Case 1:24-cv-00441, Document 89-2, Filed 01/08/2025, Page 67

# EXHIBIT B

# State Of Delaware

Entity Details

11/14/2024   3:16:34PM

| | | | |
|---|---|---|---|
| File Number: | 6069098 | Incorporation Date / Formation Date: | 7/11/2016 |
| Entity Name: | CONSTELLA INTELLIGENCE, INC. | | |
| Entity Kind: | Corporation | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |
| Status: | Good Standing | Status Date: | 8/21/2024 |

## Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | INCORPORATING SERVICES, LTD. | | |
| Address: | 3500 S DUPONT HWY | | |
| City: | DOVER | Country: | |
| State: | DE | Postal Code: | 19901 |
| Phone: | 302-531-0855 | | |

## Tax Information

| | | | |
|---|---|---|---|
| Last AnnualReport Filed: | 2023 | Tax Due: | $ 0 |
| Annual Tax Assessment: | $200000 | Total Authorized Shares: | 130472573 |

## Filing History (Last 5 Filings)

| Seq | Description | No of Pages | Filing Date mm/dd/yyyy | Filing Time | Effective Date mm/dd/yyyy |
|---|---|---|---|---|---|
| 1 | Amendment Stock | 3 | 20240312 | 195500 | 20240312 |
| 2 | Restated Agent and Stock<BR>9830135 | 20 | 20231116 | 184100 | 20231116 |
| 3 | Renewal for Forfeiture/No Agent<BR>1 | 1 | 20230731 | 172100 | 20230731 |
| 4 | Agent Resignation w/o Apt<BR>9008413 - INCORPOR/ | 1 | 20220127 | 170600 | 20220127 |
| 5 | Amendment Name<BR>4IQ, INC. | 2 | 20201216 | 132800 | 20201216 |

# EXHIBIT C



# ANNUAL REPORT
# OF
# GOVERNMENTAL AFFAIRS AGENT

**NEW JERSEY ELECTION LAW ENFORCEMENT COMMISSION**
P.O. Box 185, Trenton, NJ 08625-0185
Phone: (609) 292-8700
Website: www.elec.nj.gov

## FORM L1-A
## Reporting For Calendar Year 2023

ELEC Received

Feb 14 2024
03:36 PM

FOR STATE USE ONLY

Amendment ☐

---

Name of Governmental Affairs Agent or Governmental Affairs Agent Firm:

**Genova Burns LLC**

Business Address: **494 Broad Street**

City: **Newark**     State **NJ**     Zip Code **07102**

*(Area Code) Telephone Number **973-533-0777**

**1.** Provide the following information regarding the Governmental Affairs Agent(s) on whose behalf this report is filed.

1. Name **Angelo J. Genova**

   Badge Number **1557-1**     Occupation or Business **Attorney**

   Business Address **494 Broad Street**

   City **Newark**     State **NJ**     Zip Code **07102**

   *(Area Code) Telephone Number **973-533-0777**

2. Name **Nicholas R. Amato**

   Badge Number **1557-5**     Occupation or Business **Attorney**

   Business Address **494 Broad Street**

   City **Newark**     State **NJ**     Zip Code **07102**

   *(Area Code) Telephone Number **973-533-0777**

3. Name **Rajiv D. Parikh**

   Badge Number **1557-7**     Occupation or Business **Attorney**

   Business Address **494 Broad Street**

   City **Newark**     State **NJ**     Zip Code **07102**

   *(Area Code) Telephone Number **973-533-0777**

4. Name **Avi D. Kelin**

   Badge Number **1557-8**     Occupation or Business **Attorney**

   Business Address **494 Broad Street**

   City **Newark**     State **NJ**     Zip Code **07102**

   *(Area Code) Telephone Number **973-533-0777**

5.  Name   William F. Megna

Badge Number   1557-9                    Occupation or Business   Attorney

Business Address   494 Broad Street

City   Newark                                               State   NJ        Zip Code   07102

*(Area Code) Telephone Number   973-533-0777

*Leave this field blank if your telephone number is unlisted. Pursuant to N.J.S.A. 47:1A-1.1, an unlisted telephone number is not a public record and must not be provided on this form.

**2.** Provide the following information concerning all Represented Entities.

NOTE:  Represented Entities who designate this report to include all of their activity must file Form L-2.

<table>
<tr><td colspan="2" align="center">**RECEIPT AMOUNT**</td></tr>
<tr><td>**PURPOSE:**</td><td>To report all fees, retainers, allowances, reimbursement of expenses, or other compensation received from Represented Entities for the purpose of influencing legislation, regulations, governmental processes, or communicating with the general public.</td></tr>
<tr><td>**NOTE:**</td><td>Report only the pro rata share of each receipt which is related to influencing legislation, regulations, governmental processes, or communicating with the general public.</td></tr>
</table>

1. Name of Represented Entity    Scientific Games Corp

   Business Address    6650 S. El Camino Road

   City  Las Vegas    State  NV    Zip Code  89118

   Type of Business  Gaming Services

   **RECEIPT AMOUNT**    0.00

   ☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
   ☑ Check if the Represented Entity is designating this report to indicate all of their activity.

2. Name of Represented Entity    New Meadowlands Racetrack LLC

   Business Address    1 Racetrack Drive

   City  East Rutherford    State  NJ    Zip Code  07073

   Type of Business  Racetrack Operator

   **RECEIPT AMOUNT**    0.00

   ☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
   ☑ Check if the Represented Entity is designating this report to indicate all of their activity.

3. Name of Represented Entity    14-16 Burma Road Industrial LLC dba SAK Structures LLC

   Business Address    14 Burma Road

   City  Jersey City    State  NJ    Zip Code  07305

   Type of Business  Real Estate

   **RECEIPT AMOUNT**    0.00

   ☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
   ☑ Check if the Represented Entity is designating this report to indicate all of their activity.

4. Name of Represented Entity    BioReference Laboratories, Inc.

   Business Address    481 Edward H. Ross Drive

   City  Elmwood Park    State  NJ    Zip Code  07407

   Type of Business  Laboratory Services

   **RECEIPT AMOUNT**    22,490.00

   ☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
   ☐ Check if the Represented Entity is designating this report to indicate all of their activity.

5. Name of Represented Entity    Atlantic Amateur Hockey Association

Business Address    PO Box 291

City   Ho Ho Kus    State NJ    Zip Code 07423

**RECEIPT AMOUNT**   0.00

Type of Business   Amateur Hockey Association

- [ ] Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
- [ ] Check if the Represented Entity is designating this report to indicate all of their activity.

6. Name of Represented Entity    Association Master Trust

Business Address    636 Morris Turnpike, Ste. 2A

City   Short Hills    State NJ    Zip Code 07078

**RECEIPT AMOUNT**   0.00

Type of Business   self-funded multiple employer welfare arrangement

- [ ] Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
- [x] Check if the Represented Entity is designating this report to indicate all of their activity.

7. Name of Represented Entity    New Jersey Restaurant and Hospitality Association

Business Address    126 West State Street

City   Trenton    State NJ    Zip Code 08608

**RECEIPT AMOUNT**   0.00

Type of Business   Trade Association for Restaurant and Hospitality Industry

- [ ] Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
- [ ] Check if the Represented Entity is designating this report to indicate all of their activity.

8. Name of Represented Entity    SB Hoboken Propco, LLC

Business Address    175 Belgrove Drive

City   Kearny    State NJ    Zip Code 07032

**RECEIPT AMOUNT**   0.00

Type of Business   Real Estate

- [ ] Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
- [x] Check if the Represented Entity is designating this report to indicate all of their activity.

9. Name of Represented Entity    EDP Soccer

Business Address    8 Cornwall Court

City   East Brunswick    State NJ    Zip Code 08816

**RECEIPT AMOUNT**   0.00

Type of Business   Youth Soccer

- [ ] Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
- [x] Check if the Represented Entity is designating this report to indicate all of their activity.

**10. Name of Represented Entity**    State Fair Group

Business Address    331 Newman Springs Road

City    Red Bank    State    NJ    Zip Code    07701

**RECEIPT AMOUNT**

Type of Business    Operation of Amusement Park

850.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

**11. Name of Represented Entity**    Parkway Autonomous Inc.

Business Address    146 Wolcott Street

City    Brooklyn    State    NY    Zip Code    11231

**RECEIPT AMOUNT**

Type of Business    Transportation

0.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

**12. Name of Represented Entity**    New Jersey Democratic State Committee

Business Address    142 W State Street

City    Trenton    State    NJ    Zip Code    08608

**RECEIPT AMOUNT**

Type of Business    Political Party

6,765.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

**13. Name of Represented Entity**    Atlas Privacy

Business Address    2810 N Church Street, Unit 72500

City    Wilmington    State    DE    Zip Code    19802

**RECEIPT AMOUNT**

Type of Business    Data Privacy

0.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

**14. Name of Represented Entity**    CEP Renewables

Business Address    331 Newman Springs Road

City    Red Bank    State    NJ    Zip Code    07701

**RECEIPT AMOUNT**

Type of Business    Solar Developer

0.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

**SCHEDULE A**

1. Provide the following information for any Governmental Affairs Agent named in this Annual Report who served as a member of:

> ➤ any independent State authority;

> ➤ any county improvement authority;

> ➤ any municipal utilities authority;

> ➤ any inter-State or bi-State authority as a member from New Jersey; or,

> ➤ any board or commission established by statute or resolution, or by executive order of the Governor, or by the Legislature, or by any Agency, Department or other instrumentality of the State.


(If this question does not apply, move on to question 2.)

Name of Governmental Affairs Agent _____

Name of Authority, Board, or Commission _____

Date When Term of Service Expires _____


Name of Governmental Affairs Agent _____

Name of Authority, Board, or Commission _____

Date When Term of Service Expires _____


Name of Governmental Affairs Agent _____

Name of Authority, Board, or Commission _____

Date When Term of Service Expires _____


Name of Governmental Affairs Agent _____

Name of Authority, Board, or Commission _____

Date When Term of Service Expires _____


2. Did all Governmental Affairs Agent(s) named in this Annual Report file all Notices of Representation and Quarterly Reports required during the calendar year covered by this Annual Report?

☑ Yes  If "yes," continue on to Schedule B.          ☐ No  If "no," please file the necessary reports immediately.

## SCHEDULE B - SALARY & COMPENSATION

**PURPOSE:** To report the salary and compensation paid to the Governmental Affairs Agents on whose behalf this report is filed. Include the reimbursement of an Agent's expenses in amounts reported.

**NOTE:** Only the pro rata share of each Governmental Affairs Agent's salary and compensation need to be included if the Agent spends only a portion of his/her time on lobbying activity.

| NAME OF GOVERNMENTAL AFFAIRS AGENT | AMOUNT |
|---|---|
| Angelo J. Genova | $ 12,095.00 |
| Nicholas R. Amato | $ 0.00 |
| Rajiv D. Parikh | $ 6,765.00 |
| Avi D. Kelin | $ 11,245.00 |
| William F. Megna | $ 0.00 |
| SCHEDULE B TOTAL $ | 30,105.00 |

## SCHEDULE C - SUPPORT PERSONNEL

**PURPOSE:** To report the costs of support personnel who, over the course of the reporting year, individually spend 450 or more hours supporting the activities of the Governmental Affairs Agent(s).

After determining to which person(s) this applies, report the pro rata share of those costs which are attributable to supporting the activities of the Governmental Affairs Agent(s) in influencing legislation, regulations, governmental processes, or communicating with the general public.

SCHEDULE C TOTAL $ _____ 0.00

## NO SCHEDULE D FOR GOVERNMENTAL AFFAIRS AGENTS

# SCHEDULE E - COMMUNICATION EXPENSES

**PURPOSE:** To report the costs of the preparation and distribution of materials related to influencing legislation, regulations, governmental processes, and conducting communications with the general public.

| EXPENSE | AMOUNT |
|---|---|
| Printed Materials | $ 0.00 |
| Postage | 0.00 |
| Film, Slides, Video, Audio | 0.00 |
| TV - Network | 0.00 |
| TV - Cable | 0.00 |
| Radio | 0.00 |
| Other Broadcast Medium | 0.00 |
| Internet | 0.00 |
| Telephone, Facsimile | 0.00 |
| Pro Rata Overhead Costs of Specific Events Over $100 (*please identify name and date of event*) | |
| | |
| | |
| | |
| | |
| Other (*please describe*): | |
| | |
| | |
| | |
| | |
| **SCHEDULE E TOTAL $** | 0.00 |

# SCHEDULE F - TRAVEL/LODGING

**PURPOSE:** To report the travel and lodging costs of the Governmental Affairs Agents on whose behalf this report is filed related to influencing legislation, regulations, governmental processes, or communicating with the general public.

| NAME OF GOVERNMENTAL AFFAIRS AGENT | AMOUNT |
|---|---|
| | $ 0.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| **SCHEDULE F TOTAL $** | 0.00 |

**SCHEDULE G-1**

## ITEMIZATION OF BENEFITS WHICH EXCEEDED $25 PER DAY OR $200 PER CALENDAR YEAR TO STATE OFFICIALS AND THEIR IMMEDIATE FAMILY MEMBERS

**PURPOSE:** To report detailed information concerning benefits passed to State officials covered by the Act, as well as the immediate family members of these officials. If the value of a benefit exceeded $25 per day or $200 per calendar year, report below.

*(Select one description item for each entry from the drop down list. When selecting "O - Other", enter a description in the space provided.)*

---

Name of Benefit Recipient _____

Date _____    Description _____    _____    Amount $            0.00

Name and Address of Payee/Vendor
Name _____

Address _____

City _____    State _____    Zip Code _____

If benefit was reimbursed, please report the date, the description, and the amount of the reimbursement.
Date _____    Amount $ _____

Description _____    _____

---

Name of Benefit Recipient _____

Date _____    Description _____    _____    Amount $

Name and Address of Payee/Vendor
Name _____

Address _____

City _____    State _____    Zip Code _____

If benefit was reimbursed, please report the date, the description, and the amount of the reimbursement.
Date _____    Amount $ _____

Description _____    _____

---

Name of Benefit Recipient _____

Date _____    Description _____    _____    Amount $

Name and Address of Payee/Vendor
Name _____

Address _____

City _____    State _____    Zip Code _____

If benefit was reimbursed, please report the date, the description, and the amount of the reimbursement.
Date _____    Amount $ _____

Description _____    _____

---

Name of Benefit Recipient _____

Date _____    Description _____    _____    Amount $

Name and Address of Payee/Vendor
Name _____

Address _____

City _____    State _____    Zip Code _____

If benefit was reimbursed, please report the date, the description, and the amount of the reimbursement.
Date _____    Amount $ _____

Description _____    _____

---

# SUMMARY OF BENEFIT PASSING

**PURPOSE:** To report the total amount of providing benefits to State officials covered by the Act and their immediate family members.

| | SCHEDULE G-1 | | SCHEDULE G-2* | | AMOUNT |
|---|---|---|---|---|---|
| Entertainment | $ _____ | + $ | 0.00 | = $ | 0.00 |
| Food and Beverage | _____ | + | 0.00 | = | 0.00 |
| Travel | _____ | + | 0.00 | = | 0.00 |
| Lodging | _____ | + | 0.00 | = | 0.00 |
| Honoraria | _____ | + | 0.00 | = | 0.00 |
| Loans | _____ | + | 0.00 | = | 0.00 |
| Gifts | _____ | + | 0.00 | = | 0.00 |
| Other (specify) _____ | _____ | + | 0.00 | = | 0.00 |
| **Total** | $ _____ | + $ | 0.00 | = $ | 0.00 |

**SCHEDULE G-1 AND
SCHEDULE G-2 TOTAL**

\* Enter, by category, the value of benefit passing where the expenditure did NOT exceed the $25/day or $200/calendar year thresholds.

**TOTAL AMOUNT OF REIMBURSED BENEFITS, IF ANY.
DO NOT DEDUCT THIS AMOUNT FROM BENEFIT PASSING AMOUNTS.**          $ _____

# SUMMARY OF LOBBYING EXPENDITURES

**EXPENDITURES**

| | | | |
|---|---|---|---|
| 1. Salary and Compensation | Schedule B Total | $ | 30,105.00 |
| 2. Support Personnel | Schedule C Total | | 0.00 |
| 3. Communication Expenses | Schedule E Total | | 0.00 |
| 4. Travel and Lodging | Schedule F Total | | 0.00 |
| 5. Benefit Passing | Schedule G-1 and Schedule G-2 Total | | 0.00 |
| | **Total Lobbying Expenditures** | $ | 30,105.00 |

**SUMMARY OF TOTAL RECEIPTS FROM REPRESENTED ENTITIES**          $          30,105.00

## CERTIFICATION

This certification shall be signed by either the Governmental Affairs Agent filing this Annual Report on his/her own behalf, or by the Managing or Principal Partner or Chief Executive Officer of the Governmental Affairs Agent Firm.

I, Angelo Genova
_____
(enter name)

hereby certify that I am duly authorized by

Genova Burns LLC
_____
(enter name of firm)

to file and certify the accuracy and correctness of this Annual Report of Lobbying Activity for calendar year   2023_____  .
I certify that the statements made herein are true and accurate. I am aware that if any of the foregoing statements are willfully false, I may be subject to punishment.

Registration Number   **********_____      PIN   **********_____

Verify Registration
Number & PIN

ANGELO J GENOVA
_____
Signature

February 14, 2024
_____
Date

* Your name must appear on the signature line *

# EXHIBIT D

# STATE *of* DELAWARE
# CERTIFICATE *of* INCORPORATI
# *A* STOCK CORPORATION

State of Delaware
Secretary of State
Division of Corporations
Delivered  11:41 AM 04/27/2021
FILED  11:41 AM 04/27/2021
SR  20211466942  -  File Number  5874663

## FIRST - Name

The name of the Corporation is:
RoundRobin Corporation

## SECOND – Registered Agent

Its registered office in the State of Delaware is to be located at 8 The Green Ste. B, in the City of Dover County of Kent Zip Code 19901.  The registered agent in charge thereof is Northwest Registered Agent Service, Inc.

## THIRD - Purpose

The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

## FOURTH - Stock

The amount of the total stock this corporation is authorized to issue is 10,000,000 shares (number of authorized shares) with a par value of $0.00001 per share.

## FIFTH - Incorporator

The name and mailing address of the incorporator are as follows:

Northwest Registered Agent Service, Inc.
8 The Green Ste B, Dover, DE 19901

**I, The Undersigned,** for the purpose of forming a corporation under the laws of the State of Delaware, do make, file and record this Certificate, and do certify that the facts herein stated are true, and I have accordingly hereunto set my hand this 27th day of April, A.D. 2021.

BY: *Morgan Noble*

_____

Northwest Registered Agent Service, Inc., Incorporator
Morgan Noble, Assistant Secretary

State of Delaware
Secretary of State
Division of Corporations
Delivered 07:05 PM 01/10/2024
FILED 07:05 PM 01/10/2024
SR 20240090973 - File Number 5874663

**THIRD CERTIFICATE OF AMENDMENT
TO THE AMENDED AND RESTATED
CERTIFICATE OF INCORPORATION OF
ROUNDROBIN CORPORATION**

The undersigned does hereby certify on behalf of RoundRobin Corporation (the "***Corporation***"), a corporation organized and existing under the Delaware General Corporation Law, as follows:

**FIRST**: That he is the duly elected and acting Chief Executive Officer of the Corporation.

**SECOND**: That the Certificate of Incorporation of the Corporation was originally filed with the Secretary of State of the State of Delaware on April 27, 2021.

**THIRD**: That the Amended and Restated Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on July 2, 2021.

**FOURTH**: That the Certificate of Amendment to the Amended and Restated Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on June 24, 2022.

**FIFTH**: That the Second Certificate of Amendment to the Amended and Restated Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on November 14, 2022.

**SIXTH:** That Article I of the Amended and Restated Certificate of Incorporation of the Corporation is hereby amended to read in its entirety as follows:

**"ARTICLE I**

The name of the corporation is Atlas Data Privacy Corporation (the "***Corporation***")."

**SEVENTH**: That the foregoing amendment to the Corporation's Amended and Restated Certificate of Incorporation of the Corporation have been duly adopted and approved by the Board of Directors of the Corporation in accordance with the applicable provisions of Section 242 of the General Corporation Law of the State of Delaware.

**IN WITNESS WHEREOF**, the undersigned hereby further declares and certifies under penalty of perjury that the facts set forth in the foregoing certificate are true and correct to his own knowledge, and that this certificate is his own act and deed.

Executed on _January 10, 2024_____.

**ROUNDROBIN CORPORATION**

By: _Matt Adkisson_____
DocuSigned by:
217D8CC2E673400...

Matt Adkisson, Chief Executive Officer

# EXHIBIT E

**STATE OF NEW JERSEY**
**DEPARTMENT OF THE TREASURY**
**DIVISION OF REVENUE AND ENTERPRISE SERVICES**
**SHORT FORM STANDING**

**ATLAS DATA PRIVACY CORPORATION**
*0451071286*

I, the Treasurer of the State of New Jersey, do hereby certify that the above-named Delaware Foreign For-Profit Corporation was registered by this office on January 12, 2024.

As of the date of this certificate, said business continues as an active business in good standing in the State of New Jersey, and its Annual Reports are current.

I further certify that the registered agent and office are:

*REGISTERED AGENTS INC.*
*FIVE GREENTREE CENTRE, 525 ROUTE 73*
*STE 104*
*MARLTON, NJ 08053*



*IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal at Trenton, this 22nd day of March, 2024*

*Elizabeth Maher Muoio*
*State Treasurer*

Certificate Number : 6151987208

Verify this certificate online at

https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Atlas Data Privacy Corporation

**DEFENDANTS**

Constella Intelligence, Inc.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Rajiv D. Parikh, PEM Law LLP
1 Boland Drive, Suite 101, West Orange, NJ 07052
(973) 577-5500 | rparikh@pemlawfirm.com

Attorneys *(If Known)*

Lauri Mazzuchetti, Kelley Drye & Warren LLP
One Jefferson Road, 2nd Floor, Parsippany, NJ 07054
(973) 503-5900 | lmazzuchetti@kelleydrye.com

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [X] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | **PERSONAL INJURY** | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [X] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | **LABOR** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Management Relations | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 740 Railway Labor Act | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 751 Family and Medical Leave Act | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 790 Other Labor Litigation | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | [ ] 791 Employee Retirement Income Security Act | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | |
| | | [ ] 550 Civil Rights | | |
| | | [ ] 555 Prison Condition | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | |

Additional OTHER STATUTES / SOCIAL SECURITY / FEDERAL TAX SUITS:

| SOCIAL SECURITY | FEDERAL TAX SUITS |
|---|---|
| [ ] 861 HIA (1395ff) | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| [ ] 862 Black Lung (923) | [ ] 871 IRS—Third Party 26 USC 7609 |
| [ ] 863 DIWC/DIWW (405(g)) | |
| [ ] 864 SSID Title XVI | |
| [ ] 865 RSI (405(g)) | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1332, 1441 and 1446

Brief description of cause:
Plaintiffs allege violations of Daniel's Law (N.J.S.A. 47-1A-1, et seq., and N.J.S.A. 56:8-166.1)

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 11/18/2024 | /s/ Lauri A. Mazzuchetti |

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

I.(a)   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c)   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

IV.   **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

V.   **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI.   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII.   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.**  This section of the JS 44 is used to reference related cases, if any.  If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.